**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 1:14-md-02542 (VSB) (SLC) |
| 20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC., Plaintiff, v. KEURIG GREEN MOUNTAIN, INC., Defendant. | No. 1:26-cv-04074 (VSB) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KEURIG GREEN MOUNTAIN, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

A. Judicial Estoppel Does Not Apply Where, as Here, a Bankruptcy Trustee Has Directed the Pursuit of a Previously Undisclosed Claim for the Benefit of Creditors ........ 6

B. Keurig Has Failed to Establish Any of the Prerequisites for Applying Judicial Estoppel Here. ........ 9

1. There Have Been No Inconsistent Statements by Butterfly Nor Did the Bankruptcy Court Adopt an Inconsistent Statement ........ 10

2. There Is No Unfair Advantage to Butterfly. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Recovery Tr.*,
634 F.3d 678 (2d Cir. 2011)....................7

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
748 F.3d 110 (2d Cir. 2014)....................7

*In re Ampace Corp.*,
279 B.R. 145 (Bankr. D. Del. 2002)....................10

*Ashmore v. CGI Grp., Inc.*,
923 F.3d 260 (2d Cir. 2019).................... *passim*

*Azuike v. BNY Mellon*,
962 F. Supp. 2d 591 (S.D.N.Y. 2013)....................6

*In re Bed Bath & Beyond Inc.*,
No. 23-13359-VFP (Bankr. D.N.J.)....................1

*BPP Illinois v. Royal Bank of Scotland*,
859 F.3d 188 (2d Cir. 2017)....................14, 15

*BPP Illinois v. Royal Bank of Scotland*,
No. 13-cv-638, 2015 WL 6143702 (S.D.N.Y. Oct. 19, 2015)....................6, 15

*Clark v. All Acquisition, LLC*,
886 F.3d 261 (2d Cir. 2018)....................6, 9

*Cody v. Charter Commc'ns, LLC*,
No. 17-cv-7118, 2020 WL 3639935 (S.D.N.Y. July 6, 2020)....................15

*Cowan v. Ernest Codelia, P.C.*,
No. 98-cv-5548, 2001 WL 856606 (S.D.N.Y. July 30, 2001)....................5

*Curiale v. Tiber Holding Corp.*,
No. 95-5284, 1997 WL 597944 (E.D. Pa. Sept. 18, 1997)....................5

*D'Antignac v. Deere & Co.*,
604 F. App'x 875 (11th Cir. 2015) (per curiam), *aff'd BPP Illinois v. Royal Bank of Scotland*, 859 F.3d 188 (2d Cir. 2017)....................6

*DeBella v. Duarte*,
No. 3:17-cv-01560, 2019 WL 1438178 (D. Conn. Apr. 1, 2019)....................14

*Edwards v. CGI Grp. Inc.*,
No. 11-cv-8611, 2018 WL 4043142 (S.D.N.Y. Aug. 10, 2018)....................7

*Equal Emp. Opportunity Comm'n v. Foodcrafters Distribution Co.*,
No. CV 03-2796, 2005 WL 8176024 (D.N.J. Jan. 28, 2005)....................11

*Grammer v. Mercedes Benz of Manhattan*,
No. 12-cv-6005, 2014 WL 1040991 (S.D.N.Y. Mar. 13, 2014)....................8

*Greenhart Durawoods, Inc. v. PHF Int'l Corp.*,
No. 91-cv-3731, 1994 WL 652434 (S.D.N.Y. Nov. 18, 1994)....................9

*Harrison v. Republic of Sudan*,
838 F.3d 86 (2d Cir. 2016)....................14

*In re I. Appel Corp.*,
300 B.R. 564 (S.D.N.Y. 2003), *aff'd*, 104 F. App'x 199 (2d Cir. 2004)....................11

*Intellivision v. Microsoft Corp.*,
484 F. App'x 616 (2d Cir. 2012)....................5

*Isnady v. Village of Walden*,
2019 WL 3252753 (S.D.N.Y. July 19, 2019)....................5, 6, 12

*Julian v. Metro. Life Ins. Co.*,
No. 17-cv-00957, 2021 WL 1226749 (S.D.N.Y. Mar. 31, 2021)....................14

*In re JZ L.L.C.*,
371 B.R. 412 (B.A.P. 9th Cir. 2007)....................15

*Keathley v. Buddy Ayers Constr., Inc.*,
146 S. Ct. 1532 (2026)....................12

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
383 F. Supp. 3d 187 (S.D.N.Y. 2019)....................5

*Knipe v. Skinner*,
999 F.2d 708 (2d Cir. 1993)....................14

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
337 F.3d 314 (3d Cir. 2003)....................7, 12

*Labrache v. A-C Prod. Liab. Tr.*,
No. 09-cv-30218, 2014 WL 10390332 (E.D. Pa. Sept. 8, 2014)....................12, 13

*Legree v. City of Waterbury*,
No. 3:22-cv-00659, 2024 WL 3964944 (D. Conn. Aug. 28, 2024)....................13

*Luxemburg S.A. v. Wells Fargo Sec. LLC*,
10 F. Supp. 3d 504 (S.D.N.Y. 2014)....................13

*Montoya v. Daniel O'Connell's Sons, Inc.*,
No. 15-cv-01580, 2017 WL 1167336 (S.D.N.Y. Mar. 28, 2017)....................8

*Murray v. Bd. of Educ. of City of New York*,
248 B.R. 484 (S.D.N.Y. 2000)....................5, 10

*Newman v. Staten Island Univ. Hosp.*,
No. 98-cv-4121, 2005 WL 8161163 (E.D.N.Y. June 21, 2005)....................8

*In re Old CP, Inc.*,
No. 21-20111, 2024 WL 3755575 (Bankr. D. Conn. Aug. 9, 2024)....................5

*In re Perry H. Koplik & Sons, Inc.*,
357 B.R. 231 (Bankr. S.D.N.Y. 2006)....................8, 10

*Reciprocal Merch. Servs., Inc. v. All Advert. Assocs., Inc.*,
163 B.R. 689 (S.D.N.Y. 1994)....................13

*Resol. Tr. Corp. v. Gregor*,
872 F. Supp. 1140 (E.D.N.Y. 1994)....................5

*Rosenshein v. Kleban*,
918 F. Supp. 98 (S.D.N.Y. 1996)....................6, 8, 9

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996)....................5, 11, 12

*United States v. Hussein*,
178 F.3d 125 (2d Cir. 1999)....................5

*Yetter v. Wise Power Sys., Inc.*,
929 F. Supp. 2d 329 (D. Del. 2013)....................6, 12

**Other Authorities**

20230930-DK-Butterfly-1, Inc., *Form 8-K*, SEC.gov (Sept. 21, 2023),
https://www.sec.gov/Archives/edgar/data/886158/000119312523247428/d579010d8k.htm....................1

2 Keith M. Lundin & William H. Brown, *Chapter 13 Practice & Procedure* § 16:7 (2025 ed.)....................9

Overstock.com, Inc., *Form 8-K*, SEC.gov (Oct. 24, 2023),
https://www.sec.gov/Archives/edgar/data/1130713/000113071323000074/nameandlistingchangepressr.htm....................2

## INTRODUCTION

Keurig's motion hinges on two false premises: *first*, that 20230930-DK-Butterfly-1, Inc. ("Butterfly" or "Plaintiff"), the successor entity to Bed Bath & Beyond Inc. and its debtor affiliates (collectively, "BBB" or "Debtors"), has "emerged" from bankruptcy as a "reorganized" active business; and *second*, that Butterfly hid its claim arising from Keurig's unlawful and anticompetitive conduct relating to K-Cups from its creditors and now seeks to bring that claim post-bankruptcy for its own enrichment. *See* Keurig's Motion to Dismiss Complaint ("Motion") at 1–3, 5, 8 (Dkt. No. 22). Nothing could be further from the truth. Butterfly, acting at the direction of the bankruptcy Plan Administrator and pursuant to the express terms ordered by the Bankruptcy Court,[1] filed this lawsuit solely for the benefit of its creditors. As a result, the cases on which Keurig relies are inapplicable, and the equitable arguments Keurig makes fall flat. For these reasons and those discussed more fully below, Keurig's motion should be denied.

## BACKGROUND

Butterfly is not bringing this lawsuit for its own benefit, and no iteration of BBB will emerge from bankruptcy as an operating business or in any other capacity.[2] In addition to the

[1] The bankruptcy proceedings at issue are entitled *In re Bed Bath & Beyond Inc.*, No. 23-13359-VFP (Bankr. D.N.J.). As used herein, "Bankruptcy Order" refers to the Findings of Fact, Conclusions of Law, and Order entered by the Bankruptcy Court in that case at Dkt. No. 2172. "Confirmed Plan" refers to the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates. *Id*. at Dkt. No. 2172, Ex. A. The Bankruptcy Order and Confirmed Plan are attached hereto as Exhibit 1.

[2] *See* Bankruptcy Order ¶ 56 ("[T]he Plan provides for the liquidation of the Estates' assets and resignation of the Debtors' officers, directors, and managers . . ."); Confirmed Plan, Article VII(B) ("From and after the Effective Date . . . Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date."); *see also* 20230930-DK-Butterfly-1, Inc., *Form*

clear mandate of the Confirmed Plan, this is further evidenced by BBB's July 2023 sale of its intellectual property and other significant assets to Overstock.com, including its website and domain names, trademarks, trade names, patents, customer database, loyalty program data, and other brand assets related to the BBB banner.[3]

To the contrary, Butterfly, which now operates as the "Wind-Down Debtor,"[4] exists solely to marshal and distribute the remaining assets of the Debtors for the benefit of BBB's creditors.[5] As the Confirmed Plan makes clear, any recoveries Butterfly obtains are to be disbursed to

---

*8-K* at 2, SEC.gov (Sept. 21, 2023), https://www.sec.gov/Archives/edgar/data/886158/000119312523247428/d579010d8k.htm ("[A]ll of the Company's equity interests, consisting of outstanding shares of common stock and Series A Convertible Preferred Stock of the Company and related rights to receive or purchase shares of common stock, were cancelled on the Effective Date without consideration and have no value.").

[3] *See* Overstock.com, Inc., *Form 8-K*, Ex. 99.1, SEC.gov (Oct. 24, 2023), https://www.sec.gov/Archives/edgar/data/1130713/000113071323000074/nameandlistingchangepressr.htm ("On June 28, 2023, Overstock.com, Inc. acquired the Bed Bath & Beyond brand and associated intellectual property.").

[4] *See* Confirmed Plan, Article I(A)(156) (defining "Wind-Down Debtors" as "the Debtors, or any successor thereto, by merger, consolidation, or otherwise, including any liquidating trust, on or after the Effective Date"), Article I(A)(45) (defining "Debtors" as Bed Bath & Beyond Inc. and its subsidiaries); *see also* 20230930-DK-Butterfly-1, Inc.'s Complaint ¶ 21, Dkt. No. 1 ("BBB was known as 'Bed Bath & Beyond Inc.' at all relevant times until September 21, 2023, when it changed its name to '20230930-DK-Butterfly-1, Inc.' as part of its winddown following Chapter 11 bankruptcy.").

[5] *See* Bankruptcy Order ¶ 74 ("[O]n the Effective Date, all property of the Estates shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and effecting Consummation of the Plan."); *see also* Confirmed Plan, Article IV(A) ("On the Effective Date, or as soon as reasonably practicable thereafter, the Wind-Down Debtors shall take all actions as may be necessary or appropriate to effectuate the Liquidation Transactions."), Article IV(F)(3) ("On and after the Effective Date, if applicable, the Wind-Down Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible; (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder; . . . (e) enforcing and prosecuting claims, interests, rights, and privileges under all Causes of Action in an efficacious manner . . . , (h) liquidating all assets of the Wind-Down Debtors . . .").

BBB's creditors.[6] Specifically, after all senior creditor claims are paid in full, any general unsecured creditors will be paid on a pro rata basis from "the Shared Proceeds Pool" and "any remaining Distributable Proceeds."[7]

To facilitate recovery for the creditors, all assets of the BBB bankruptcy estate have been vested in Butterfly as Wind-Down Debtor,[8] with Butterfly acting at the direction of the Plan Administrator, Michael Goldberg,[9] who has been granted broad authority by the Bankruptcy Court to obtain and distribute those assets to BBB's creditors. As Plan Administrator, he serves as "the exclusive trustee," "president and chief executive officer," and "sole officer" of the Wind-Down Debtor,[10] and possesses all "rights, powers, and duties of a trustee in bankruptcy."[11] This includes the "power and authority to take any action necessary to wind down and dissolve any of the Debtors' Estates" and "to sell, liquidate, or otherwise dispose of any and all of the Wind-

---

[6] *See, generally*, Confirmed Plan, Articles III and IV.

[7] *See* Confirmed Plan, Article III(A)(6), Article I(A)(143) (defining "Shared Proceeds Pool" to include "all funds allocated to the Debtors or the applicable Successor Entity, as applicable, in accordance with the Sharing Mechanism."), Article I(A)(58) (defining "Distributable Proceeds" to include "all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve.").

[8] *See* Confirmed Plan, Article IV(F)(2) ("[O]n the Effective Date, all property of the Estates shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances . . . On and after the Effective Date, the Debtors and the Wind-Down Debtors may (at the direction of the Plan Administrator) use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules."); *see also* Bankruptcy Order ¶ 91 (same).

[9] *See* Bankruptcy Order ¶ 28 ("The selection of Michael Goldberg as the Plan Administrator is consistent with the interests of Holders of Claims and Interests and public policy.").

[10] *See* Bankruptcy Order ¶ 94 ("president and chief executive officer" and "sole officer"); *see also* Confirmed Plan, Article VII(A)(1) ("exclusive trustee").

[11] Confirmed Plan, Article VII(A)(1).

Down Debtors' assets without any additional notice to or approval from the Bankruptcy Court."[12] Pursuant to these powers, the Plan Administrator directed Butterfly to file the present lawsuit.

In order to maximize the recovery for BBB's creditors, the Plan Administrator has been given the duty and authority to pursue any cause of action that could have been originally brought by the Debtors, regardless of whether or not the Debtors specifically listed that cause of action as an asset in their earlier bankruptcy filing.[13] Specifically, the Bankruptcy Order provides that "[a]ll Causes of Action shall automatically vest in the Wind-Down Debtors, and the Plan Administrator shall have the right and authority to investigate, commence, prosecute, or settle, as appropriate, any and all Non-Released Claims, whether arising *before or after the Petition Date*."[14]

The Confirmed Plan further makes clear that the Plan Administrator's ability to pursue such causes of action for the benefit of the creditors is not barred by any form of judicial estoppel:

> No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them. ***No preclusion doctrine***, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion***, estoppel (judicial, equitable or otherwise)***, or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.[15]

[12] *See* Bankruptcy Order ¶ 99; *see also* Confirmed Plan, Article IV(F)(4).

[13] *See* Bankruptcy Order ¶¶ 47, 126; *see also* Confirmed Plan, Article IV(F)(4), Article IV(F)(7).

[14] Bankruptcy Order ¶¶ 47, 126 (emphasis added); *see also* Confirmed Plan, Article IV(F)(7) (same), Article I(A)(99) (defining "Non-Released Claims" as "all Claims and Causes of Action belonging to a Debtor or its Estate.").

[15] Confirmed Plan, Article IV(F)(7) (emphasis added).

## LEGAL STANDARD

"To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 217 (S.D.N.Y. 2019). A court may consider material susceptible to judicial notice in deciding a motion to dismiss. *Cowan v. Ernest Codelia, P.C.*, No. 98-cv-5548, 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001). Further, in determining whether claims should be barred by judicial estoppel, "it is proper [for a court] to consider public documents on a motion to dismiss," *id,* including prior bankruptcy proceedings. *See, e.g.*, *Isnady v. Village of Walden*, 2019 WL 3252753, at *1–2 (S.D.N.Y. July 19, 2019).

"Judicial estoppel is a rarely used doctrine and exists to protect the court, not a party, from a party's chicanery." *Resol. Tr. Corp. v. Gregor*, 872 F. Supp. 1140, 1153 (E.D.N.Y. 1994). "Courts generally only invoke estoppel sparingly and to prevent injustice." *In re Old CP, Inc.*, No. 21-20111, 2024 WL 3755575, at *2 (Bankr. D. Conn. Aug. 9, 2024). A judicial estoppel defense cannot succeed without "a showing that [a party] acted in bad faith or with intent to mislead the Court." *Murray v. Bd. of Educ. of City of New York*, 248 B.R. 484, 487 (S.D.N.Y. 2000) (citing *United States v. Hussein,* 178 F.3d 125, 130 (2d Cir. 1999)); *see also Curiale v. Tiber Holding Corp.*, No. 95-5284, 1997 WL 597944, at *9 (E.D. Pa. Sept. 18, 1997) (accord) (citing *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362–63 (3d Cir. 1996)).

"[I]n evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (1) that a party's new position is clearly inconsistent with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Intellivision v. Microsoft Corp.*, 484 F.

App'x 616, 619 (2d Cir. 2012) (citations and quotations omitted). However, "[j]udicial estoppel is not a mechanical rule" and, thus, even where these prerequisites are met, courts still "must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of [judicially estopping a litigant]." *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018) (citation omitted).

## ARGUMENT

### A. Judicial Estoppel Does Not Apply Where, as Here, a Bankruptcy Trustee Has Directed the Pursuit of a Previously Undisclosed Claim for the Benefit of Creditors.

Keurig's judicial estoppel argument rests on its false characterization of Butterfly as a "reorganized" debtor that hid claims from its creditors so that it could "emerge" from bankruptcy and pursue those claims for its own benefit. As set forth above, this is patently untrue.

Indeed, nearly every case Keurig cites in support of its argument involves a debtor withholding an asset from its creditors during bankruptcy proceedings, obtaining favorable treatment from the bankruptcy court as a result, and then seeking to recapture the asset for its own benefit (and to the detriment of the creditors) after emerging from bankruptcy.[16] The other

[16] *See e.g.*, *BPP Illinois v. Royal Bank of Scotland*, No. 13-cv-638, 2015 WL 6143702, at *9 (S.D.N.Y. Oct. 19, 2015), ("Plaintiffs also had an obvious motive 'to make the inconsistent statements—namely, that if [they] did not disclose the claims to the bankruptcy court, [they] could keep all the proceeds if [they] won [their] suit.") (quoting *D'Antignac v. Deere & Co.*, 604 F. App'x 875, 879 (11th Cir. 2015) (per curiam), *aff'd BPP Illinois v. Royal Bank of Scotland*, 859 F.3d 188, 192–94 (2d Cir. 2017); *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013) (judicial estoppel applied where plaintiff omitted claim from bankruptcy schedule in "bad faith . . . attempt to obtain unfair advantage, specifically, to prevent the trustee from pursuing his claim for the benefit of his creditors while preserving his ability to recover on the claim himself"); *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) (similar); *Isnady v. Village of Walden*, 2019 WL 3252753, at *1–2 (similar); *Yetter v. Wise Power Sys., Inc.*, 929 F. Supp. 2d 329, 333 (D. Del. 2013) (holding that judicial estoppel barred debtor from seeking to recover omitted claims, where debtor sought to recover a portion for himself).

cases Keurig cites are inapposite.[17] But, Butterfly is not a "reorganized" debtor seeking to use recoveries from a claim it failed to disclose during bankruptcy for the benefit of its ongoing business enterprise. Rather, it is acting as a wind-down debtor operating at the direction of a bankruptcy Plan Administrator, who possesses all "rights, powers, and duties of a trustee in bankruptcy,"[18] and is charged by the Bankruptcy Court with liquidating the remaining assets of

---

[17] *In re Adelphia Recovery Tr.*, 634 F.3d 678, 686 (2d Cir. 2011) ("*Adelphia I*") is readily distinguishable. *Adelphia I* did not involve a debtor that inadvertently failed to disclose claims on a bankruptcy schedule and later sought recovery. Rather, the debtor in *Adelphia I* knowingly took a position in a separate bankruptcy proceeding—one in which it was a creditor—to gain an advantage that was inconsistent with a subsequent position in its own bankruptcy proceeding, to the detriment of the party against whom that claim was asserted. That knowing, strategic inconsistency—the hallmark of judicial estoppel—is entirely absent here. *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 119 (2d Cir. 2014) ("*Adelphia II*") is similarly unavailing. There, the debtor took a position as to ownership of certain assets—well after confirmation and substantial consummation of the bankruptcy plan—that was contrary to the treatment of those assets as the "cornerstone of the bankruptcy plan, and without [which] the entire process would have been at risk of unraveling." 748 F.3d at 119. Those circumstances are also entirely absent here. There is no dispute that Butterfly's antitrust claims against Keurig belong to the Estate, and any recovery by Butterfly in this action will inure to the benefit of creditors without threatening the integrity of any confirmed plan or imposing prejudice on any party.

Keurig also cites *Edwards v. CGI Grp. Inc.*, No. 11-cv-8611, 2018 WL 4043142 (S.D.N.Y. Aug. 10, 2018) and *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314 (3d Cir. 2003) in support of its argument that Plaintiff's claims should be barred by the equitable doctrine of judicial estoppel. But, those cases are similarly misplaced. *Edwards* is distinguishable for two reasons. First, in *Edwards*, the trustee had abandoned the claim, which is not the case here. 2018 WL 4043142 at *5. Second, while the district court judicially estopped the debtor from bringing his claim, *id.* at *9, on appeal, the Second Circuit vacated the district court's application of judicial estoppel because there was no "undisputed evidence that [the plaintiff] intentionally concealed his claim." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 281 (2d Cir. 2019) (citation omitted). In *Krystal*, the Third Circuit concluded that the debtor had engaged in "duplicitous conduct" in omitting its claim from the bankruptcy schedule and, therefore, the application of judicial estoppel was necessary to prevent the debtor from "reap[ing] the benefit of any recovery beyond the amount paid to satisfy outstanding debts." 337 F.3d at 325. In contrast, none of any potential recovery in the instant action would go to Butterfly.

[18] Confirmed Plan, Article VII(A)(1).

the bankruptcy estate to distribute the proceeds to BBB's creditors. *See supra* at 5. This distinction is dispositive and renders judicial estoppel wholly inapplicable.

"The courts are in agreement that creditors, trustees and debtors in possession may pursue undisclosed claims following confirmation of a plan of reorganization by methods that ensure that the creditors receive the benefit of any recovery." *Rosenshein*, 918 F. Supp. at 103 (collecting cases). In fact, courts have repeatedly rejected application of judicial estoppel under circumstances similar to those at issue here as a "misapplication of the doctrine." *Newman v. Staten Island Univ. Hosp.*, No. 98-cv-4121, 2005 WL 8161163, at *8 (E.D.N.Y. June 21, 2005) (refusing to bar a trustee from pursuing undisclosed post-bankruptcy claims, because the trustee "represents the interests of plaintiffs' creditors" and holds the right "to prosecute all causes of action which could have been prosecuted by the bankrupt entity or debtor, had bankruptcy not intervened"); *see also In re Perry H. Koplik & Sons, Inc.*, 357 B.R. 231, 248 (Bankr. S.D.N.Y. 2006) (refusing to apply judicial estoppel because the doctrine "does not bar the Trustee's claims"); *Grammer v. Mercedes Benz of Manhattan*, No. 12-cv-6005, 2014 WL 1040991, at *6 (S.D.N.Y. Mar. 13, 2014) (allowing the trustee to pursue undisclosed claims "for the benefit of the estate and its creditors…"); *Montoya v. Daniel O'Connell's Sons, Inc.*, No. 15-cv-01580, 2017 WL 1167336, at *5 (S.D.N.Y. Mar. 28, 2017) (refusing to estop a trustee from pursuing undisclosed claims, because if "the Trustee can secure recovery from Defendants, that money will go towards satisfying [] creditors…").

The circumstances here make clear that none of the rationales for applying judicial estoppel in the context of undisclosed claims during bankruptcy are present in this case. Judicial estoppel is invoked in such circumstances to "prevent [a] party from playing fast and loose with the courts" to the detriment of its creditors. *Rosenshein*, 918 F. Supp. at 103–104 (explaining that

judicial estoppel is used to "prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy" for "their own benefit."); *see also* 2 Keith M. Lundin & William H. Brown, *Chapter 13 Practice & Procedure* § 16:7 (2025 ed.) ("The central requirement [of judicial estoppel] is that the debtor purposefully failed to schedule the cause of action in an effort to obtain the benefits of bankruptcy—the elimination of debts through discharge—while concealing the cause of action so that she could retain all of the proceeds for herself.").

Instead of protecting creditors, estopping Butterfly from pursuing the present lawsuit would have the opposite impact: insulating Keurig from antitrust liability and preventing a potential recovery for BBB's creditors. *See Greenhart Durawoods, Inc. v. PHF Int'l Corp.*, No. 91-cv-3731, 1994 WL 652434, at *2 (S.D.N.Y. Nov. 18, 1994) (rejecting judicial estoppel because it "would only result in a windfall to [the defendant] at the expense of [the plaintiff's] other creditors" and that "the preferred course is to permit [the plaintiff's] creditors to share in a recovery from this action, if any."). "Numerous courts have permitted the pursuit of undisclosed claims after confirmation in order to prevent an alleged wrongdoer from obtaining a windfall because the debtor failed to schedule its claims and to ensure that the creditors benefit from any recovery." *Rosenshein*, 918 F. Supp. at 103 (collecting cases).

### B. Keurig Has Failed to Establish Any of the Prerequisites for Applying Judicial Estoppel Here.

A statement that is clearly inconsistent with a party's earlier position and some unfair advantage arising from that statement are prerequisites for application of judicial estoppel. *See Clark*, 886 F.3d at 267 ("[C]ases make clear that this inquiry begins by asking whether the prior inconsistent position in question gave the party to be estopped an unfair advantage over the party seeking estoppel.") (internal quotations omitted). Additionally, a judicial estoppel defense cannot

succeed without "a showing that [a party] acted in bad faith or with intent to mislead the Court." *Murray*, 248 B.R. at 487 (citation omitted). Keurig has failed to make the requisite showing here.

**1. There Have Been No Inconsistent Statements by Butterfly Nor Did the Bankruptcy Court Adopt an Inconsistent Statement.**

Butterfly has not made any inconsistent statements, because it expressly preserved the right to bring "Non-Released Claims" in the Confirmed Plan. *See supra* at 7. As defined in the plan, "Non-Released Claims" includes "all Claims and Causes of Action belonging to a Debtor or its Estate." *Id.* "[W]hether a party is advancing inconsistent claims in the bankruptcy context is largely informed by the bankruptcy court's treatment of those claims." *Ashmore*, 923 F.3d at 272 (citation omitted). In approving the Confirmed Plan, the Bankruptcy Court expressly concluded that "all Causes of Action," including the instant claim, would "vest in the Wind-Down Debtors," with the Plan Administrator retaining "the right and authority to . . . commence, prosecute, or settle . . . any and all of the Non-Released Claims, whether arising before or after the Petition Date."[19] *See supra* at 7.

Courts in this District have held that a bankruptcy plan's general reservation clause preserves post-confirmation claims even where the debtor "did not specifically identify and reference the Trustee's current claims against [the defendant]." *In re Perry H. Koplik & Sons, Inc.*, 357 B.R. at 246 (citing *In re Ampace Corp.,* 279 B.R. 145, 158 (Bankr. D. Del. 2002) ("[T]here is nothing in [section 1123(b)(3)(B)] to suggest that the plan must specifically

[19] As a result, Keurig also fails to satisfy the second consideration for application of judicial estoppel—a court's acceptance of an earlier inconsistent statement—because the Bankruptcy Court was aware of and explicitly approved the general reservation clause preserving these future causes of action. Therefore, the Bankruptcy Court did not adopt a position that is contrary to what Butterfly asserts in this case, and there is no risk of inconsistent rulings. *See Ashmore*, 923 F.3d at 272 ("Because the [judicial estoppel] doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain.").

identify each and every claim and/or interest belonging to the debtor that may be subject to retention and enforcement.”)); *see also In re I. Appel Corp.*, 300 B.R. 564, 569 (S.D.N.Y. 2003), *aff’d*, 104 F. App’x 199 (2d Cir. 2004) (“Mandating a specific description of every claim the debtor intends to pursue could entail months or years of investigation” and would “either delay recovery for creditors or would induce the debtor to abandon valid claims”—“[n]either result is desirable. . .”).

When examining the existence of possible inconsistent statements, courts look to the law of the Circuit where the bankruptcy proceeding occurred “for the limited purpose of determining whether the failure to list a particular claim on a debtor’s bankruptcy filings is equivalent to an assertion that the debtor did not have such a claim.” *Ashmore*, 923 F.3d at 273 (internal quotations omitted). The Third Circuit, where BBB’s bankruptcy proceeding was filed, has “‘expressly left open the question of whether . . . nondisclosure [on bankruptcy filings], standing alone, can support a finding that a plaintiff has asserted inconsistent positions within the meaning of the judicial-estoppel doctrine.’” *Id.* at 273 (citing *Ryan Ops. G.P.*, 81 F.3d at 362); *see also Equal Emp. Opportunity Comm’n v. Foodcrafters Distribution Co.*, No. CV 03-2796, 2005 WL 8176024, at *2 (D.N.J. Jan. 28, 2005) (accord).

According to the Third Circuit, “policy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding. Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies.” *Ryan Ops. G.P.*, 81 F.3d at 364. The Second Circuit has advised that the Third Circuit law should be interpreted as requiring an

examination of "the bad or good faith of the debtor" and the presence of "intentional wrongdoing." *Ashmore*, 923 F.3d at 274–75 (citing *Ryan Ops. G.P.*, 81 F.3d at 362).[20]

Keurig relies on a lone—and distinguishable—decision from Delaware, *Yetter*, for the sweeping proposition that the Court should simply presume bad faith whenever a debtor fails to list a claim on its bankruptcy schedules. *See* Motion at 7–8. But, *Yetter* does not support that broad rule. In that case, the court found bad faith based on two compelling and specific facts that have no analog here: (i) the debtor had certified throughout its bankruptcy proceedings that it had no potential claims, notwithstanding that it had filed an earlier version of the very same lawsuit *before* declaring bankruptcy; and (ii) the debtor filed a new lawsuit asserting identical claims on the same day its bankruptcy was discharged. *See Yetter*, 929 F. Supp. 2d at 330. Those facts made the debtor's improper motive self-evident. No such facts are present here, and *Yetter* therefore provides no basis for the presumption Keurig asks this Court to draw.

Moreover, the Supreme Court recently cautioned that a mechanical presumption of bad faith is "not only overly rigid; it is also overly broad." *Keathley v. Buddy Ayers Constr., Inc.*, 146 S. Ct. 1532, 1540 (2026). Rather, the Court concluded that, because "judicial estoppel is an equitable doctrine," district courts must act "'on a case-by-case basis,' considering all relevant facts and circumstances" before denying a plaintiff its day in court. *Id*. at 1539; *see also Labrache v. A-C Prod. Liab. Tr.*, No. 09-cv-30218, 2014 WL 10390332, at *6 (E.D. Pa. Sept. 8, 2014) (quoting *Krystal Cadillac*, 337 F.3d at 319–20; *Ryan Ops. G.P.*, 81 F.3d at 363) (internal

[20] Similarly, courts in the Second Circuit have ruled that "judicial estoppel does not apply" where the "failure to disclose [a claim in bankruptcy] results from a 'good faith mistake or an unintentional error.'" *Isnady*, 2019 WL 3252753, at *6, *aff'd*, 799 F. App'x 91 (2d Cir. 2020) (citations omitted). Courts have found a good faith exception where a debtor inadvertently fails to disclose assets in the bankruptcy proceeding "when . . . the debtor has . . . no motive to conceal the claims." *Id.* (citations omitted).

citations omitted) ("The Third Circuit has further concluded that a 'rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.' However, the application of this inference does not arise 'from the mere fact of nondisclosure.'").

Butterfly had no motive to hide the instant claim from its creditors, because no portion of any recovery will go to the company itself.[21] As discussed above, Butterfly is a liquidating entity that brought this action exclusively for the benefit of the creditors, and any recovery must be distributed to those creditors alone. *See supra* at 4–5. Courts routinely hold that there can be no bad faith under such circumstances. *See Ashmore*, 923 F.3d at 276 (declining to find bad faith where the debtor's nondisclosure was "far from seeking to channel recovery to [him] at the creditor's expense" and "sought to preserve the creditors' rights in any settlement."); *Reciprocal Merch. Servs., Inc. v. All Advert. Assocs., Inc.*, 163 B.R. 689, 697 (S.D.N.Y. 1994) (declining to invoke judicial estoppel where "defendants have failed to set forth any evidence of RMS's deliberate intention either to mislead the Bankruptcy Court or to obtain unfair advantage" and that it was "not a case in which RMS sought to conceal potential recoveries in order to induce creditors to accept a compromise."); *Legree v. City of Waterbury*, No. 3:22-cv-00659, 2024 WL 3964944, at *5 (D. Conn. Aug. 28, 2024) (declining to apply judicial estoppel where there was no evidence that the debtor "intended to deceive the Bankruptcy Court for his benefit."); *see also Labrache*, 2014 WL 10390332, at *6 (declining to find bad faith where plaintiff omitted asbestos claims in bankruptcy action because creditors would be "entitled to be paid from any recovery

[21] Moreover, to the extent this dispute turns on whether Butterfly's omission constitutes bad faith, "issues of intent and motive are typically factual inquiries that should not be decided on a motion to dismiss…" *Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 517 (S.D.N.Y. 2014).

Plaintiff makes in the asbestos action."); *DeBella v. Duarte*, No. 3:17-cv-01560, 2019 WL 1438178, at *2 (D. Conn. Apr. 1, 2019) (refusing to apply judicial estoppel in part because "the facts do not circumstantially suggest a significant likelihood that the omission was the product of any intent to deceive" and the estate "intends to pursue this action for the benefit of [debtor's] creditors.").[22]

**2. There Is No Unfair Advantage to Butterfly.**

When determining whether to apply judicial estoppel, another factor courts consider is the existence of an "unfair advantage *against the party seeking estoppel*." *Ashmore*, 923 F.3d at 272 (emphasis added). Yet, nowhere does Keurig argue that it has been prejudiced or that it has suffered any unfair treatment.[23] Nor could it do so in good faith.

Instead, Keurig attempts to conflate the usual factor courts consider when assessing judicial estoppel with a narrow exception that some courts have recognized in instances where *former creditors* have been disadvantaged. *See Ashmore*, 923 F.3d at 272, 277–78 (holding that courts "often require" a showing of unfair advantage against the party seeking estoppel but overlook this requirement under a narrow circumstance where former creditors have been disadvantaged). It does so by misleadingly citing *BPP Illinois,* where the court held that the debtor would obtain an "unfair advantage at the expense of its former creditors," as support for a broad proposition that the focus should be on the impact to creditors. *See* Motion at 8–9 (quoting 859 F.3d at 194). However, Keurig ignores that the parties seeking judicial estoppel in *BPP*

[22] *Compare with Julian v. Metro. Life Ins. Co.*, No. 17-cv-00957, 2021 WL 1226749, at *7 (S.D.N.Y. Mar. 31, 2021) (finding motive to conceal where a debtor knew that disclosure would result in the trustee "attempt[ing] to sell the claim or to have extracted a settlement from the defendants in this case for the benefit of [plaintiff's] creditors") (citations omitted).

[23] Any such contention by Keurig in its reply brief is therefore waived. *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *see also Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016) (accord).

*Illinois* were the actual former creditors, not some unimpacted antitrust defendant hoping to sidestep liability for its unlawful anticompetitive conduct, as here. *See BPP Illinois*, 859 F.3d at 191; *see also BPP Illinois*, 2015 WL 6143702, at *2. Accordingly, the *BPP Illinois* court's analysis was consistent with the general standard of analyzing unfair advantage against the party seeking estoppel.

Even if the circumstances here were examined under the narrow exception where former creditors were unfairly disadvantaged, Keurig's argument still fails. Keurig simply parrots that Butterfly would "enjoy an unfair advantage at the expense of its former creditors." Motion at 8. Yet, Keurig fails to explain how that could be the case where, as here, Butterfly, at the direction of a bankruptcy Plan Administrator, who has been bestowed with the powers of a bankruptcy trustee, is pursuing previously undisclosed claims for the exclusive benefit of BBB's creditors. As a result, one of the core rationales for applying judicial estoppel in the case of undisclosed claims at bankruptcy is absent here. *See Cody v. Charter Commc'ns, LLC*, No. 17-cv-7118, 2020 WL 3639935, at *9 (S.D.N.Y. July 6, 2020) (holding that trustees are not judicially estopped from asserting claims since trustees "seek recovery on behalf of Plaintiff's creditors."); *see also In re JZ L.L.C.*, 371 B.R. 412, 421 (B.A.P. 9th Cir. 2007) ("If the terms of the confirmed plan (as here) are such that the proceeds would, in any event, go to creditors, then there may be no need for estoppel.").

## <u>CONCLUSION</u>

For the reasons set forth above, Keurig's Motion to Dismiss Butterfly's Complaint should be denied. Butterfly is not a reorganized debtor seeking to profit from a previously undisclosed claim; it is a wind-down entity acting exclusively at the direction of the bankruptcy Plan Administrator, who holds all the rights and duties of a trustee in bankruptcy. Any recovery from this action will flow directly—and only—to BBB's creditors. In turn, Keurig is unable to satisfy

the requisites for applying judicial estoppel: *first*, it cannot demonstrate that Butterfly has made any inconsistent statements, because there is an express preservation of the right to bring future causes of action for the benefit of creditors in the Confirmed Plan and no bad faith on the part of Butterfly; *second*, because of that same express preservation, it cannot establish that the Bankruptcy Court has adopted any inconsistent statement; and *third*, it cannot show any unfair advantage to itself or to BBB's creditors. Accordingly, judicial estoppel is not warranted, and Keurig's Motion should be denied.

Dated: July 16, 2026

/s/William V. Reiss
William V. Reiss
Laura Song
**CROWELL & MORING LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Phone: 212-803-4029
Fax: 212-223-4134
wreiss@crowell.com
lsong@crowell.com

Daniel A. Sasse
3 Park Plaza
20th Floor
Irvine, CA 92614
Phone: 949-798-1347
Fax: 949-263-8414
dsasse@crowell.com

Matthew J. McBurney
600 5th Street NW
Washington, DC 20001
Phone: 202-624-2500
Fax: 202-628-5116
mmcburney@crowell.com

*Attorneys for Plaintiff 20230930-DK-Butterfly-1, Inc., f/k/a Bed Bath & Beyond Inc.*